IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ELENZA, INC., | § | |
| | § | No. 287, 2017 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. N14C-03-185 |
| ALCON LABORATORIES | § | |
| HOLDING CORPORATION and | § | |
| ALCON RESEARCH, LTD., | § | |
| | § | |
| Defendants Below, | § | |
| Appellees. | § | |

Submitted: January 17, 2018
Decided: March 20, 2018

Before **STRINE**, Chief Justice; **VALIHURA**, **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices.

Upon Appeal from the Superior Court of the State of Delaware: **AFFIRMED**.

Timothy J. Simeone, Esquire *(Argued)*, Charles T. Kimmett, Esquire, Walter E. Anderson, Esquire, and John R. Grimm, Esquire, Harris, Wiltshire & Grannis LLP, Washington, District of Columbia; Andrew D. Cordo, Esquire and F. Troupe Mickler IV, Esquire, Ashby & Geddes, Wilmington, Delaware; for Plaintiff-Below, Appellant Elenza, Inc.

Heidi K. Hubbard, Esquire, Daniel P. Shanahan, Esquire, David Randall J. Riskin, Esquire *(Argued)*, Tamara A. Rubb, Esquire, and Michelle L. Hood, Esquire, Williams & Connolly LLP, Washington, District of Columbia; Michael P. Kelly, Esquire, Daniel M. Silver, Esquire, and Benjamin P. Smyth, Esquire, McCarter & English LLP, Wilmington, Delaware; for Defendant-Below, Appellees Alcon Laboratories Holding Corporation and Alcon Research, Ltd.

**SEITZ**, Justice:

Replacement lenses used to treat eye cataracts have a limitation—the new lenses focus only at one distance. In most cases, reading glasses are still required after surgery. Elenza, Inc. thought it had a solution to the problem—an electro-active intraocular lens ("EAIOL") that used electric power and changes in eye pupil size to "trigger" the focus of an artificial lens. If it worked, patients could see clearly at multiple distances without glasses.

Alcon Laboratories Holding Corporation, a developer of artificial lenses, was also exploring EAIOL lenses. Elenza and Alcon decided to jointly pursue the technology, first by signing a Non-Disclosure Agreement ("NDA"), followed by a Stock Purchase Agreement ("SPA"). Unfortunately, the project fizzled after Elenza failed to meet development milestones in the SPA. Much to Elenza's surprise, two years later, Alcon filed a patent application for an EAIOL and announced that it was working with Google, Inc. to develop an EAIOL.

Elenza filed suit in Superior Court and claimed that Alcon breached its agreements with Elenza and misappropriated Elenza's EAIOL trade secrets. Before trial, the Superior Court granted in part Alcon's motion for summary judgment, finding that Elenza failed to support its trade secret claims. The court also limited Elenza's damage claims. Elenza's contract claims went to trial. A jury found against Elenza on all claims.

2

On appeal, Elenza argues that the Superior Court erred when it granted summary judgment on its trade secret claims. According to Elenza, at the summary judgment stage, its trade secret disclosures were sufficient to prove that trade secrets existed and that Alcon used or disclosed those secrets in its later development efforts. We need not, however, reach Elenza's claim on appeal that it raised disputed factual issues about the existence of trade secrets because we agree with the Superior Court that, at summary judgment, Elenza failed to support its claim that Alcon improperly used or disclosed any of Elenza's alleged trade secrets. Thus, we affirm the Superior Court's judgment.

I.

Alcon Laboratories Holding Corporation ("Alcon") develops and markets standard cataract replacement lenses, called intraocular lenses ("IOL").[1] Elenza, Inc. ("Elenza") was an ophthalmic company that sought to develop an electro-active intraocular lens ("EAIOL"). A standard IOL can only focus at one distance, but an EAIOL might be able to focus at multiple distances using a physiological trigger and special battery technology. In 2009, Alcon became interested in developing an EAIOL and considered potential partners, including Elenza. On May 24, 2010,

---

[1] Alcon Research Ltd., also an appellee in this suit, is a research division of the same Swiss company as Alcon Laboratories Holding Corporation, Novartis AG. Alcon Research Ltd. and Alcon Laboratories Holding Corporation are referred to as "Alcon."

3

Elenza and Alcon signed a Non-Disclosure Agreement ("NDA") and discussed development of an EAIOL that would use pupil size as the physiological trigger.[2] The parties, along with other investors, decided to enter a two-step Stock Purchase Agreement ("SPA") to advance EAIOL development.[3] In the first step, the "Initial Closing," Alcon would acquire 30% of Elenza's outstanding shares for roughly $7.5 million.[4] In the second step, the "Milestone Closing," Alcon would make a second investment if Elenza: (1) completed a successful clinical study confirming Elenza's ability to develop a reliable physiological trigger based on pupil diameter, to be assessed by a Joint Development Committee; (2) executed a Development Agreement; and (3) procured a Research License.[5]

In December 2011, Alcon decided that Elenza had not met the first milestone, causing the parties to sign a "Clarification Agreement" that formally terminated their relationship and dissolved all remaining contractual obligations, except the obligation to keep information exchanged under the NDA confidential.[6] Elenza could not find new investors for its EAIOL project and ceased its operations in

---

[2] App. to Opening Br. at 100–03 (Confidentiality Agreement, May 24, 2010).
[3] *See id.* at 257–327 (Series B Preferred Stock Purchase Agreement, Feb. 7, 2011).
[4] *Id.* at 263 (SPA, at 2 § 2.1(a)).
[5] *Id.* at 279 (SPA, at 18 § 5.14(a)–(c)); *id.* at 303–04 (Purchase Agreement Ex. C., Definition of Milestone).
[6] Mot. for Summ. J., *Elenza, Inc.*, No. N14C-03-185, at Ex. 29 (Clarification Agreement, July 9, 2012)).

August 2013 for lack of funds.[7]  Alcon continued its research and development and filed an August 29, 2013 patent application for an accommodative lens.[8]  Alcon also announced almost a year later that it was collaborating with Google to develop an EAIOL.[9]

On March 20, 2014, Elenza filed a complaint against Alcon and claimed breach of contract and misappropriation of trade secrets.  Alcon responded by filing a motion for judgment on the pleadings.  The Superior Court denied Alcon's motion, finding the "timing of Alcon's . . . Patent Application permits the reasonable inference that Alcon misappropriated Elenza's trade secrets," and finding "genuine issues of material fact about whether Alcon disclosed Elenza's trade secrets."[10]  In April 2015, Elenza filed a second amended complaint, adding claims for patent infringement and breach of fiduciary duty, and removed the case to federal court.  A month later, however, Elenza dropped the patent infringement and breach of

---

[7] App. to Answering Br. at 191 (Joint Dev. Committee Minutes, Dec. 16, 2011) ("Elenza ultimately concluded that the better course would be to seek another investor, rather than commencing the dispute resolution process.").  Elenza's CEO stated, "I've reached out to 63 venture funds over the past 18 months, and the most prevalent reason for 'passing' was because we do not yet have clinical data or revenues."  *Id.* at 220 (E-mail from Rudy Mazzocchi, Elenza Chief Exec. Officer, to Dr. Eric Donnenfield (July 1, 2013, 7:53 AM)).

[8] App. to Opening Br. at 435–44 (U.S. Pat. Application Publ'n, No. US 2013/0226293 A1 (Aug. 29, 2013) ("Accommodative IOL—Refractive Index Change Through Change in Polarizability of a Medium")).

[9] *Id.* at 528–30 (Press Release, Novartis, Novartis to License Google "Smart Lens" Technology (July 15, 2014)).  Google took responsibility for the research and development related to the electronic functionality of the EAIOL technology, while Alcon took responsibility for the pharmaceutical and medical device portion.  *Id.*

[10] *Elenza, Inc.*, 2015 WL 1417292, at *6–7 (Del. Super. Mar. 11, 2015).

5

fiduciary duty claims, and requested the case be remanded back to the Delaware Superior Court.

After remand, the Superior Court granted Elenza's motion to file a third amended complaint, which brought seven claims against Alcon: misappropriation of trade secrets, breach of contract, breach of the implied covenant of good faith and fair dealing, intentional misrepresentation, affirmative misrepresentation, misappropriation, and conversion. Elenza sought $473.7 million in damages, based on its "enterprise value" as of December 15, 2011—when Alcon determined the Second Milestone was not met.

Following extensive discovery, Alcon moved for summary judgment. The Superior Court granted the motion for the misrepresentation, conversion, misappropriation, and disclosure of trade secrets counts.[11] Pertinent to the trade secret claims, the Superior Court found:

> Elenza failed to present evidence upon which a reasonable factfinder could find disclosure of its trade secrets. Elenza has not established a *prima facie* case, through expert testimony or other evidence, that Alcon used or disclosed any trade secret, defined with a reasonable degree of precision and specificity, that was not already known or readily ascertainable. There is no genuine issue of material fact as to the disclosure of trade secrets.[12]

---

[11] *Elenza, Inc.*, 2017 WL 2651716, at *6 (Del. Super. Apr. 20, 2017).
[12] *Id.* at *4.

The court also refused to allow Elenza to pursue lost enterprise damages, finding the claim too speculative.[13]  But, the court denied the motion as to the breach of contract and breach of the implied covenant of good faith and fair dealing claims, finding genuine issues of material fact whether Elenza met the Closing Milestone and whether Alcon fraudulently induced Elenza to sign the Clarification Agreement. The breach of contract and breach of the implied covenant of good faith and fair dealing claims went to trial.  A jury returned a verdict in favor of Alcon.

II.

Elenza raises three issues on appeal.  First, Elenza argues the Court erred by finding that Elenza failed to make a *prima facie* case for the existence and misappropriation of trade secrets.  Second, Elenza argues that the court improperly denied its request for lost enterprise damages.  And third, Elenza asserts it should have a new trial on its breach of contract and breach of the implied covenant of good faith and fair dealing claims, because they were inextricably intertwined with Elenza's trade secrets claims.

This Court reviews the denial of a motion for summary judgment *de novo.*[14]

---

[13] *Id.* at \*5 ("ELENZA is a relatively new company.  It has no product, no sales, and no regulatory approval.  It is difficult for a Court to estimate the reasonableness of damages for a company with no history.  Attempting to do so would be speculative.").
[14] *Smith v. Del. State Univ.*, 47 A.3d 472, 475–76 (Del. 2012).

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact" and the movant "is entitled to a judgment as a matter of law."[15] The movant must present sufficient evidence from which a rational trier of fact could find in its favor.[16] "This Court will not draw unreasonable inferences in favor of the non-moving party."[17] Because we find dispositive Elenza's failure to raise disputed issues of material fact about Alcon's misappropriation of trade secrets, we need not reach the other issues raised on appeal.

*A.*

Under the Delaware Uniform Trade Secret Act, a trade secret is:

[I]nformation, including a formula, pattern, compilation, program, device, method, technique or process, that:

    a. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

    b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[18]

To prove trade secret misappropriation, the plaintiff must demonstrate that: (1) a trade secret exists; (2) the plaintiff communicated the secret to the defendant;

---

[15] Super. Ct. Civ. R. 56.
[16] *Smith*, 47 A.3d at 477.
[17] *Id.*
[18] 6 *Del. C.* § 2001(4).

(3) there was an express or implied understanding that the secrecy of the matter would be respected; and (4) the secret information was improperly used or disclosed to the injury of the plaintiff.[19]  A trade secret can be "[t]he combination of steps into a process . . . , even if all the component steps are known, so long as it is a 'unique process which is not known in the industry.'"[20]

In its Amended Designation of Trade Secrets, Elenza defined its trade secrets as "the technologies and information . . . both individually and when combined, in whole or in part, to form an electro-active intraocular lens that, when triggered through any variety of mechanisms, applies an electric charge to a liquid crystal filled lens in order to change the refractive index of the lens."[21]  These technologies include: hermetic seals, haptics and injectors, blink-filter algorithms, application-specific integrated circuits ("ASICs"), photovoltaic cells, and batteries.[22]  Elenza's

---

[19] *Nucar Consulting, Inc. v. Doyle*, 2005 WL 820706, at *5 (Del. Ch. Apr. 5, 2005), *aff'd*, 913 A.2d 569 (Del. 2006); *Wilmington Tr. Co. v. Consistent Asset Mgmt. Co., Inc.*, 1987 WL 8459, at *3 (Del. Ch. Mar. 25, 1987).

[20] *Merck & Co., Inc. v. SmithKline Beecham Pharms. Co.*, 1999 WL 669354, at *15 (Del. Ch. Aug. 5, 1999) (quoting *Salsbury Labs., Inc. v. Merieux Labs., Inc.*, 735 F. Supp. 1555, 1569 (M.D. Ga. 1989), *aff'd*, 908 F.2d 706 (11th Cir. 1990)); *see also id.* ("Where at individual steps of a process there are a variety of alternatives, the choice made through much effort of specific ingredients, materials, conditions, and steps in an actual, working process constitutes a trade secret."); *Imperial Chem. Indus. Ltd. v. Nat'l Distillers & Chem. Corp.*, 342 F.2d 737, 742 (2d Cir. 1965) ("[A] trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret.").

[21] App. to Opening Br. at 692 (Am. Designation of Trade Secrets, *Elenza, Inc.*, No. 1.15-cv-00348-GMS, at 1 (Del. Super. Mar. 3, 2016)).

[22] *Id.* at 692–99.  Elenza's expert, Curtis W. Frank, listed in his expert report an EAIOL roadmap, feedthroughs, wireless charging, a power budget, sensors, handheld remotes, and test-methods. *Id.*

expert conceded that each of the technologies identified by Elenza in its Amended Designation of Trade Secrets is generally known or readily available to the public.[23] Elenza was therefore forced to take a different tack, claiming its specific use of each component, when combined into an EAIOL process, is a trade secret.[24] In other words, the alleged trade secrets are the "information on how one could actually fabricate one of these essential components and to do so under the constraint of maintaining compatibility with all of the other components."[25] Even assuming, however, that Elenza's combination of known technologies into a process qualifies as a trade secret, we agree with the Superior Court that Elenza failed to raise disputed issues of fact as to whether Alcon misappropriated Elenza's trade secrets.

---

at 1824–28 (Frank, Expert Report, *Elenza, Inc.*, No. N14C-03-185, at 14–18 (Del. Super. Aug. 19, 2016)). In its opening brief, Elenza also claims Liquid Crystal Display technology and glass materials in wet etching. Opening Br. at 25.

[23] App. to Answering Br. at 836 (Frank Dep. 22) ("Q. You would agree that the general concept of hermetically sealing an EAIOL was known in the field before 2010; correct? A. Yes. Q. And as a result, you agree that the general concept of hermetically sealing an EAIOL is not a trade secret; correct? A. Yes. Q. You agree that the general concept of hermetically sealing an EAIOL is not Elenza's confidential information. A. Yes."); *id.* at 841 (same as to IOL injectors); *id.* at 845 (same as to using blink sequences as physiological triggers); *id.* at 848 (same as to microchips (ASICs)); *id.* at 857 (same as to using photovoltaic cells to measure pupil diameter); *id.* at 849 (same as to charge pumps); *id.* at 851–52 (same as to inductive recharging); *id.* at 855 (same as to wireless charging and communicating); *id.* at 858 (same as to wet etching and laser bonding glass substrates); *id.* at 866 (same as to liquid crystals). Elenza's Chief Technology Officer conceded that he never researched whether the components were generally known. *See* App. to Opening Br. at 1630–63 (Gupta Dep.).

[24] App. to Opening Br. at 1998–99 (Frank, Expert Rebuttal Report, *Elenza*, No. N14C-03-185, at 3–4 ¶¶ 7–23 (Del. Super. Oct. 3, 2016). In his rebuttal report, Elenza's expert stated that "Elenza is not simply asserting high-level concepts of assembling various components or processes" because those were "easy to come by for one skilled in the art." *Id.* at 1999 (Frank, Expert Rebuttal Report ¶ 22).

[25] *Id.* at 1999 (Frank, Expert Rebuttal Report 4 ¶ 22).

*B.*

Under the Delaware Uniform Trade Secret Act, misappropriation means:

Disclosure or use of a trade secret of another without express or implied consent by a person who:

1. Used improper means to acquire knowledge of the trade secret; or

2. At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade was:

    A. Derived from or through a person who had utilized improper means to acquire it;

    B. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

    C. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

3. Before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.[26]

Elenza argues that it constructed a "web" of conduct that supports its misappropriation claim, based on certain aspects of Alcon's EAIOL development:[27]

- Timing: according to Elenza, Alcon had "no capabilities" in 2010, yet filed a patent application two years later.[28]

---

[26] 6 *Del. C.* § 2001(2)(b).

[27] Opening Br. at 33. *See Merck & Co., Inc.*, 1999 WL 669354, at *20 (quoting *Greenberg v. Croydon Plastics Co.*, 378 F. Supp. 806, 814 (E.D. Pa. 1974)) ("[M]ore often than not, 'plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place.'").

[28] Opening Br. at 34.

- E-mails: Alcon stated in e-mails that it wanted to "leverage" Elenza's information and that Elenza was the "only company" that could develop an EAIOL.[29]

- Employees: some of the same engineers that collaborated with Elenza worked on Alcon's EAIOL program;[30] and

- Similarities: there were general similarities to Elenza's technologies in the patent application and the presentations made to Google.[31]

The foregoing suspicious circumstances are all meaningful at the pleading stage. As the Superior Court held, those allegations allowed Elenza to defeat a motion for judgment on the pleadings.[32] But, we are now at the summary judgment stage. It is no longer time for just smoke. There has to be some fire. After substantial discovery, where Elenza's experts reviewed Alcon's EAIOL internal information under protective order, Elenza ended up relying on only two events to claim actual instead of possible misappropriation—the patent application and the presentations to Google.

Turning first to the patent application, Elenza did not raise a disputed issue of material fact regarding the use of Elenza's trade secrets. Despite extensive

---

[29] *Id.*

[30] *Id.* at 34–35.

[31] App. to Opening Br. at 1853 (Frank, Expert Report 43 ¶ 145) (stating that Alcon's EAIOL "was structurally and functionally similar to Elenza's EAIOL in many aspects").

[32] *Elenza, Inc.*, 2015 WL 1417292, at *6–7.

discovery, Elenza was unable to point to evidence supporting a rational inference that Alcon made any specific use of Elenza's claimed secrets in the patent application. Elenza's expert admitted that the patent application was "rather general" and didn't "go into specifics."[33] Throughout his deposition, when asked to provide documentary support for his opinion that Alcon or Google was using Elenza's specific designs, Elenza's expert never mentioned the patent application:

> Q. Do you have an opinion as to whether Google used or is using Elenza's specific configuration for wirelessly communicating with an EA-IOL in Google's research and development program?
> A. No, my opinion is that the collection of information that Alcon provided to Google . . . informed them. I take that as an indication that it is design data that Google may or may not use.
> Q. And do you have any evidence, documents, or testimony to indicate to you whether they're using it one way or the other?
> A. No.[34]
>
> . . .
>
> Q. [Y]ou have not seen a document that you believe shows that Alcon disclosed Elenza's specific feedthrough material specifications or testing to anyone.
> A. I do not recall one.[35]
>
> . . .
>
> Q. [D]o you have an opinion that Alcon used Elenza's information [regarding hermetic sealing] in their independent EA-IOL research program?
> A. I believe it was part—part of their design portfolio.

---

[33] App. to Answering Br. at 836 (Frank Dep. 24–25); *cf. Destiny Health, Inc. v. Conn. Gen. Life Ins. Co.*, 39 N.E.3d 275, 283 (Ill. App. Ct. 2015) (finding insufficient evidence to create a genuine issue of material fact when the expert consistently answered, "I don't know" or "I can't point to anything" that showed that defendant actually used any of the plaintiffs' trade secrets).

[34] App. to Answering Br. at 856 (Frank Dep. 104).

[35] *Id.* at 834.

Q. Can you point to any exhibit, evidence or testimony that would support that conclusion?

A. No.[36]

Elenza's expert repeated the same answers for each component—he was unable to provide an opinion, documents, evidence, or witnesses, that would create a triable issue of fact that Alcon used Elenza's trade secrets, aside from what was generally known.[37] He also never suggested that the patent application disclosed any of Elenza's specific trade secrets.

Regarding Alcon's collaboration with Google, Elenza argues that Alcon's presentations to Google provide circumstantial evidence that "Alcon employed Elenza's confidential information extensively in its work with Google."[38] Once again, however, Elenza's expert could not point to any evidence in the presentations made to Google that disclosed Elenza's specific design or use:

Q: Does slide 4 disclose any specific Elenza trade secret or confidential information?

A. No.[39]

. . .

Q. So you would agree with me that slide 5 . . . does not disclose any Elenza trade secret or confidential information?

A. No.[40]

. . .

---

[36] *Id.* at 837.

[37] *Id.* at 839, 841–45, 849, 851–52, 854, 856, 861, 863–64, 872, 874.

[38] Opening Br. at 35.

[39] App. to Answering Br. at 869 (Frank Dep. 154).

[40] *Id.* at 872.

Q. Do you agree that slide 16 and 17 do not disclose any Elenza trade secret or confidential information as we reviewed earlier today?

A. I guess that's true.[41]

. . .

Q. And you would agree with me, then, that Deposition Exhibit 635 [a Google presentation] does not disclose any Elenza confidential or trade secret information; correct?

A. Yes.[42]

This line of questioning continued throughout the deposition.[43] Elenza's expert failed to point to any information in the slides supporting an inference that Alcon disclosed Elenza's specific information beyond what was generally known.[44]

The circumstances here are strikingly similar to those in *Savor, Inc. v. FMR Corp.*[45] In *Savor, Inc.*, the plaintiff presented circumstantial evidence that the defendants had the "motive and opportunity" to misappropriate its trade secret, and

---

[41] *Id.*

[42] *Id.* at 882; *see also id.* at 883 ("Q. So you agree with me that Deposition Exhibit 567 [a second Google presentation] does not contain any Elenza confidential or trade secret information? A. Yes."); *id.* (same as to a third Google presentation).

[43] *Id.* at 862–64, 869–71, 876–77, 880–81. Further, at the pretrial conference, Elenza's counsel admitted that "we have not seen that [the slides] were actually used in connection with the Google meeting" and "the draft slides contained the Elenza slides" but "those slides were not provided to Google." App. to Opening Br. at 2189, 2192 (Pretrial Tr., *Elenza, Inc.*, No. N14C-03-185, at 8–9, 19–20 (Del. Super. June 1, 2017).

[44] Elenza argues that Alcon used "*exact copies* of slides" from Elenza presentations. Opening Br. at 14. But Elenza only cites one "Back-up" slide found in the draft presentation, which contains two images from an Elenza presentation. The final presentation sent to Google, however does not contain this slide. *See* App. to Opening Br. at 586 (Electro-Active (Autofocus)—IOL Optics Review Draft Presentation, Back-Up Slides, at 6 (Oct. 24, 2014)); App. to Answering Br. at 244–90 (Electro-Active (Autofocus)—IOL Optics Review Final Presentation (Oct. 27, 2014)). At most, in one presentation, Alcon disclosed that it had "done a pupil study in collaboration with a third party" without naming Elenza, but explained that it found that "pupil sensing was not an appropriate avenue to pursue." App. to Opening Br. at 625 (Pettit Dep. 84).

[45] 2004 WL 1965869 (Del. Super. July 15, 2004).

that the defendant's program was "sufficiently similar" to its own to create an inference of misappropriation. [46] The Superior Court found the plaintiff's circumstantial evidence was insufficient because the plaintiff could only establish that the defendant "could have disclosed" the trade secret—it provided no evidence that it actually did.[47] Similarly, Elenza attempts to show Alcon had the "motive and opportunity" to misappropriate its trade secret based on Alcon's collaboration with Google, and that the EAIOL designs were "sufficiently similar" based on the patent application. Like *Savor, Inc.*, however, this information is insufficient to give rise to an inference of misappropriation because Elenza could only establish that Alcon "could have" used Elenza's designs.[48] It could not point to any evidence in the presentations or patent application that it actually did.[49]

---

[46] *Id.* at *8.

[47] *Id.* at *9 ("The opportunity to acquire information is not the same as actually acquiring it.").

[48] *See* App. to Answering Br. at 868–83 (Frank Dep. 152–211); *see also*, *e.g.*, *id.* at 835 ("Q. [D]o you have an opinion [that] Alcon used Elenza's specific feedthrough materials, specifications, or testing in their own EAIOL research? A. The opinion is that Elenza provided at least one option for feedthroughs . . . . That *could have been* what [Alcon] used. It was one of their options.") (emphasis added); *id.* at 851–52 ("Q. Do you have an opinion that Alcon used Elenza's specific configuration for inductively recharging an EAIOL . . . ? A. They *could choose* one approach or Elenza's approach that was available to them. Q. Do you have any evidence, documents, or testimony that would suggest to you that they chose to use Elenza's information? A. I'm not aware of any documents.") (emphasis added).

[49] *See also Othentec Ltd. v. Phelan*, 526 F.3d 135, 142 (4th Cir. 2008) (rejecting the plaintiffs' misappropriation of trade secrets claim where the plaintiffs' expert stated he had his "suspicions" that the defendant used their secrets, but he could not identify the specific aspects defendants used).

Elenza relies on *Monovis, Inc. v. Aquino* to support its misappropriation claim.[50] In *Monovis*, the Western District of New York found that the plaintiffs adequately pled misappropriation of trade secrets involving a single-screw compressor because the circumstantial evidence against the defendants was "anything but ambiguous or delicate."[51] The circumstantial evidence consisted of a "speedy coming of age in the single-screw compressor marketplace" and a "comparison of the plaintiffs' and the defendants' manufacturing techniques . . . of a highly technical nature."[52] The court concluded that the plaintiffs' trade secret "chart[ed] the way through the many problems and decisions faced in designing a single-screw compressor and developing a practical manufacturing technique."[53] Here, Elenza's circumstantial evidence is much more "delicate." While Elenza states that it "solved a variety of technical challenges for the production of [an EAIOL], by making the 'important choices' at 'various process steps,'" it does not explain in any detail what those "technical challenges" or "important choices" were. Nor does it provide any evidence Alcon used or disclosed those important choices or steps—aside from listing the components it conceded were generally known.[54]

---

[50] 905 F. Supp. 1205 (W.D.N.Y. 1994).

[51] *Id*. at 1231.

[52] *Id.*

[53] *Id.*

[54] Opening Br. at 25 (quoting *Merck & Co., Inc.*, 1999 WL 669354, at *17); *see Trident Prods. & Servs., LLC*, 859 F. Supp. 2d at 780 (explaining that the plaintiff "must support its claim with 'actual objective evidence,' not 'only inference'").

Thus, Elenza failed to support its trade secret misappropriation claim by providing evidence that would support a judgment in its favor. Instead, it relied solely on speculation and conjecture.

III.

Elenza failed to raise a disputed issue of material fact that Alcon misappropriated its trade secrets. Thus, the Superior Court did not err when it granted summary judgment to Alcon on Elenza's trade secret misappropriation claim. Because our disposition of the trade secret claims is dispositive of the appeal, we need not address Elenza's additional claims that the court erred by denying its damages calculation and request for a new trial. The judgment of the Superior Court is affirmed.